JACKSON, *ex dem.* NEWCOMB, SUPERVISOR, &c. *against* SMITH
AND OTHERS.

*Where a patent for a tract of land is granted, reserving a certain number of acres for public uses, it seems that the patentee has the right to elect in what part of the tract the land reserved shall be located.*

*Where a survey of land was made by the direction and under the observation of the grantee, it was held that he could not, afterwards, especially after the lapse of 26 years, vary the location, but must be deemed as having assented to the survey as made.*

THIS was an action of ejectment for lands in *Plattsburgh*.

A patent dated 26th *October*, 1784, was granted by the people to *Z. Platt*, for 31,360 acres of land, in which there was a reservation of 960 acres; 400 acres for the use of the gospel, and 460 acres for the use of schools.

*Platt* caused the outlines of the patent to be surveyed; and a map thereof to be made, designating all the lots, including two lots for the use of the gospel, and three for the use of schools, and directed a survey of the whole tract to be made, according to such map. During the survey, he resided at *Plattsburgh*, and the surveyors reported to him weekly; and if any of the lines were found to be incorrect, they were ordered to correct them according to the map, which was done. The defendants, deriving title under *Z. Platt*, claimed the premises in question, as part of lot No. 66. have exercised acts of ownership, by cutting timber, and were in possession of the land, but had made no improvements.

Part of the land reserved for the use of the gospel was described, in the *field book* of the survey, as the *glebe lot*, and its metes and bounds were given. The courses and lines of the lot, as given in the *field book*, are all remaining. The premises in question, as described in the *field book*, were included in the *glebe lot*, and in lot No. 66. but as they are designated on the original map, the premises are within lot No. 66. but are not included in the lot designated as the *glebe land*.

A verdict was taken for the plaintiff, subject to the opinion of the court, on a case containing the facts above stated.

*Woodworth* and *Skinner*, for the plaintiff. The grantors, the people, or the supervisors, as their representatives, have a right to elect in what part the 860 acres reserved are to be located.

The party who has the benefit of election, has the right of election.* This rule prevails as to grants between private persons, and the doctrine is stronger as applicable to a case like the present, in which the people are the grantors. If this doctrine is correct, there is an end to the controversy, for we elect the very land in dispute. There can be no objection as to the time when the election is made, as the land remains in a wild and uncultivated state. By bringing this suit, the lessor of the plaintiff has made the election.

But admitting that the patentee had the right of election, the plaintiff must recover. *Z. Platt* made a map for the direction of the surveyors, on which he marked the glebe lot. If the surveyors have made a mistake, we must now take according to their survey. When the patentee made his election he was bound to designate the land with so much accuracy and precision, as to enable the other party to know what land he was to take. The field book, or actual survey, though it differs from the original map, must be conclusive. It was the duty of *Platt*, if there was a mistake, to correct it immediately. After an acquiescence of 26 years in the survey, at which he was present, he must be bound by it.†

*Russel,* contra. The party who is to do the first act, has the right of election.‡ Then who was to do the first act? Not the grantors. The patentee was to consummate the grant, by taking possession of the land granted. If the rule contended for by the plaintiff is correct, the patentee never could take possession until the state had made an election as to the location of the land reserved. He could not compel the state to elect, and if he should take possession before the state had made its election, he would be liable to be dispossessed, in case it should elect the very land in his possession, and that after it had been improved for years.

If the state had the election, it is concluded by electing to take the *glebe lot,* as laid down on the map, for the action is for the premises as part of that lot. Again, if the state had the right of election, it is gone by lapse of time, not having been exercised for 26 years.

If the patentee had the right to elect, we contend that he exer-

NEW YORK, May, 1812.

JACKSON v. SMITH.

* Leo. 30. 268.

† 3 Johns. Rep. 269. 387.

‡ Co. Litt. 145. a. Com. Dig. Election, A. 1. 2 Term Rep. 439.

NEW YORK,
May, 1812.

JACKSON
v.
JOY.

*5 Johns.Rep.
507.

cised that right when he made the map, and designated the *glebe* *lot* thereon.    An election may be determined by words or acts.

If the survey was erroneous, *Platt* was not concluded from showing it to be incorrect.*

*Per Curiam.*    Assuming what the defendants contend for, that the election of the location of the gospel lot belonged to *Z. Platt,* the patentee, there is sufficient evidence of his locating it, as actually run out by the surveyor, and designated by marks and monuments.    His first location on the map was corrected and controlled by his subsequent assent to the lot as run out.    He could not have been ignorant of the location by the surveyor.    He resided at *Plattsburgh,* near the premises, and the surveyors reported to him weekly, and he corrected what he deemed incorrectly run.    The N. E. corner of the gospel lot, by the field book, began at a beach tree, on the river *Saranac,* and about seven chains E. of where *Vandenburgh* had his saw-mill.    This was a place of notoriety, and it could not have passed without observation.

The plaintiff is accordingly entitled to recover.