The opinion of the court was delivered by
Duncan, J.
The action was trespass quare clausum fregit, and cutting down and carrying away certain trees. The only description of the close was, that it was situated in Toboyne township. The defendant pleaded non cul, with.leave to give the spe? cial matters in evidence, liberum tenementum, and replication.Much has been said on these pleas. It is sufficient to observe, that pn the plea of not guilty, every thing is put in issue, which the plaintiff is bound to prove. Here it was necessary to plaintiff to prove the possession of the land, and the trespass of the defendant. If the defendant was able to prove a freehold any where ip the township, he would support this issue. In these cases it is incumbent on fhe plaintiff to make a new assignment, specifying the locus in quo. On the plea of not guilty, the possession of the *362 plaintiff, and the trespass by the defendant are put in issue, and on the plea of liberum tenementum, the title of the defendant only, who says I did not break into youi; possession, but if I did, I had a right so to do, because it is my freehold. I have found it necessary, in order to the proper understanding of the points made and decided in the Court of Common Pleas, to give a fuller detail of the evidence than is usual in Courts of Review. -[Here his honour stated the facts as before detailed.]
Ten points were made in the Court of Common Pleas to all which answers were given, and to these answers exceptions are taken. It would be tedious and unprofitable to measure step by step those ten exceptions; they will be considered generally; 1st, with relation to the title of the plaintiff and W, Armstrong, and then with respect to the possession of the plaintiff, premising, that possession without title is sufficient to support this action against a wrongdoer; that none but he who is entitled to the freehold can compel a party to show his title, and if a defendant would avail himself of the title being in a third person, he must specially plead an entry by his authority, and prove it, for the command is traversable. So that the evidence of W. Armstrong’s title could only be received as evidence of possession and boundary, and as such, all the evidence given was competent, for in order to show the extent of a possession, title papers, draughts, Sic. are constantly received, not only in actions of tresspass,. but indictments for forcible entry and detainer. 3 Burr. 1563.
That a man may convey a tract of land, reserving thereout a particular defined part, cannot now be made a question, no matter iri what part of the conveyance the reservation is made, whether in the premises, the clause of grant, the habendum or reddendum; and even where the reservation did not accurately describe the matter reserved, it might be helped out by averment, in the same manner that a conveyance not describing where the lands lay might be helped out. Br. Grant. 53. And bargains and sales without expressing a consideration, may be helped out by averment that money was paid. 2 Inst. 672. A reservation in apatent may be of so many acres for public use, and in that case, it seems, the election is in the patentee. 9 Johns. 500. But the reservation of a small quantity is so very uncertain, I doubt whether so vague an exception could be supported. Nor is it rendered much more certain, that it is a small quantity at the west qpd of the tract, and were it not for the reference to a line stated in the deed, the recital of both parties, for it is by indenture, it would be a difficult task to support this reservation. But notwithstanding this recital, where there have been several transfers of the whole tract, two of them public and judicial sales, and no notice given, and no act or claim by the person for whose benefit the reservation is, and who makes it, for 23 years, and no mark discernible on the ground, no land mark proving an actual line of division and separation, I would *363 hold, that the purchaser would be entitled to the whole tract. Nowhere in this body of evidence, I am not able to discover any proof of the existence of such line before 1797, and if the recital were prima facie evidence of the existence of some line, it is far from affording any evidence of this line. It neither describes the locus, nor the quantity; it leaves all in the dark. How could a purchaser know what, or where he was buying? The land would be locked Up from any description or improvement, nil til it pleased the grantor to strike off what he pleased, or where lie pleased. Can it consist with any principié of property, or any certainty or security in conveyances and possessions, that at the end of 23 years the grantor point out with the swing of his whip, where it was to begin, though he confesses it appears a strange wood to , him, and then leave it to the man to whom he was about to sell the small quantity, to gut the whole, and scoop out the marrow of the land, and Can it depend on his nod, how much he is to take, under the denomination of a small quantity.
If it were a case of election, the party who was to do the first act would have the right, and that according to Sir Thomas Lee’s Case, 1 Leon. 263, would be the person who was to have the benefit of the reservation. But according to Jackson v. Smith, 9 Johns. 100, it would be the grantee, and if the granlee, to consummate the grant, takes possession, it would be necessary to make the location: then the grantor could not compel him to make the election, and if he should take possession before election, he would be liable to be dispossessed, in case the grantee should elect the very land he has in possession. But this can be scarcely called a case of election, which alw.ays supposes the substance from which the election was to be made, and the quantity. But if James Armstrong had the right to elect, he would make the small quantity very small, if Hewitt the small quantity would be greater. If Armstrong had the right, he had exercised it. He must of necessity enter into the whole tract, before he could make it: consequently, when he took possession, it must be of the whole, for there were no other limits visible and notorious, and he could not square his possession by invisible lines; it extended to the whole Survey of 1767.
Armstrong came into the whole possession. Wallace came after him, and the plaintiff succeeded them in the possession, and as it respected the title, if there was no visible line before 1797, the title of the whole would pass, for in 23 years, the presumptiori would be, that this undefined small quantity had been abandoned to the grantee, and when the new owner took no measures to prosecute his right until 1812, and after another public sale, here would be a period of 38 years: this would be a strong confirmation of the first presumption. The survey in 1797, was a void act; it was a trespass on the possession of Wallace. The survey of 1812, Was equally without authority. The county surveyor had no power to *364 make it. The order of survey was functus officio, it had been ex* ecuted 45 years, returned 43 years before. If this view of the subject be.correct, as it is believed to be, the Court of Common Pleas misconceived the law so far as respected the title.
For there was no evidence of this lein of separation. There was a recital of some line struck, called a conditional line; but the recital did not conclude the parties. The recital of a particular fact may, but this recital states nothing particular. It is not a recital of boundaries, nor of quantity, nor does there exist any medium to ascertain that which is essential to the validity of the grant: but the evidence is very convincing that this line was not made until 1797. If there was an old line, there has been no fire or storm which has destroyed the marks. If there was one, why mark a new one, why did not Hewitt show it. The marks of the line of 1769, and of 1797, and of 1812, are found, but no trace of the line of 1774. In this country at that day consentable lines were not uncommon between settlers, and were often called conditional lines, lines to stand until they looked out the office rights. But the evidence amounts to demonstration, that no actual line was ever seen and marked. The prima facie evidence was done away, by this- positive proof. The not caveating the survey of 18Í2, that survey being made without authority, there being no order of re-survey, the return and patent were no evidence of an acquiescence. It was not a case to be left to the jury to decide from the whole evidence, What quantity of land was reserved, and where situated. The reservation was so uncertain as to quantity, that no earthly tribunal could decide by any rational rule, which should govern the contracts of men, what was intended by a small quantity. There could not be even a probable conjecture. It must be guess work, not the result of judgment. How could a jury, without proof aliunde,, taking up the conveyance itself, say, the small quantity is just 21 acres, and lies just where Mr. Armstrong showed it in 1797, and if we examine the evidence aliunde, so far from ascertaining the locality or quantity, it proves directly the contrary, “that nothing was done to give this reservation a local habitation, with dimensions, until 1797, and that by a lawless act, forbidden by the person possessing the general tract; The error into which the court fell, as to the title, led to all the others respecting the possession. This reservation, or rather exception; being to the grantor, and not a stranger, wbuld be good, but for its uncertainty; for an uncertain reservation such as this, might be reduced to a certainty by the grantor’s election; if there was any standard .by which to ascertain it. Hpre there is nothing but the line, and if that itself is uncertain, the reservation must be so. To compare it to a grant — if one seised of a great waste, grant the moiety of a yard-land lying in the waste, without acertaining what part, or how bounded, this may be reduced to certainty by election of the grantee. Lev. 30. Noy. 29. 1 Co. 86.
*365 So if a man grant 20 acres, parcel of his manor, without any other description of them, yet it is not void, for'an acre is a thing certain, and the situation of the thing may be reduced to a certainty by the grantee. Keelw. 84. But if to sell £ 20 worth of his land parcel of a manor, this is void, it neither being certain in . itself, nor reducible to any certainty, for no man is made judge of the value. When the act of disposal relates to another thing, that thing becomes in a manner part of the disposition, and the standard referred to being certain, the grant by relation thereto, becomes certain, according to the common maxim, id cerium est quod cerium reddipotest. But if a man grant to another so many of his trees as may be reasonably spared, this grant is void, for there is no standard to reduce it to a certainty. Moor, 880. Hob. 168. A small quantity is much more uncertain than this — nothing could be more uncertain. The line is the standard to which the grant refers, but that must be clearly established, otherwise it would be an attempt to render an uncertain thing certain by a reference to a thing whose very existence is not ascertained.
But as it respects the possession, it is to me quite clear, that Wallace and Stambaugh were from the time they first entered on the tract, in the constructive legal possession of the whole survey: it was impossible it should be otherwise, for the defendant had no title in himself to the 21 acres. Then v if the title had been in Hewitt, and conveyed by him to W. Armstrong, (for they purchased the whole tract, by visible and 'notorious boundaries and land marks,) the possessor need not show title against a wrongdoer. A wrongdoer cannot show title in a stranger. The law with respect to the extent of possession and the medium of proof, is stated with precision by Lord Mansfield, in Harker & al. v. Berbeck & al. 3 Burr. 1556, “whoever is in possession may maintain an action of trespass against a wrongdoer to his possession, and if there be a doubt about the extent of the possession, or what part liq is in possession of, the title may be given in evidence in order to maintain his possession as to that part of it, and to ascertain the extent of it.” Under the legal title, possession of part is possession of the whole, unless there is an adverse actual possession, and will enable its possessor to maintain this action for the invasion of any part of the tract. So will actual possession of a part, entering generally under a colorable title to the whole, enable the possessor to maintain the action against every one who disturbs this constructive possession of the whole, but the legal owner, or one entering by his command. The confusion in the charge proceeds entirely from the first error, and from the perplexity of considering the title and the possession in one view, and from deciding that the recital in the conveyance from Hewitt to Armstrong was prima facie evidence of the line of 1797. It was not evidence of any particular line, and if it was prima facie evidence, the presumption was done away by the whole body of evidence, and by the whole conduct of the parties. If it is possible by any evidence to prove *366 a negative, the non-existence of the line previous to 1797, was proved beyond doubt or cavil. Recitals never conclude a party. The recital of a particdlar fact may. The recital here is not of the particular fact, viz. the particular line, nor does it of itself give any validity to this grant. It refers to no established land mark, or standard.
On all these points, I think the case is clearly with the plaintiff, both as to title and possession, and will only add, if the party has any remedy on-this reservation,- it would be in a court of chancery by the appointment of commissioners, to ascertain where the small quantity lay, and in this state by ejectment for the whole tract, and then a jury would ascertain. But I confess, I see difficulty either in law or equity giving efficiency to such reservation, even applied to in a reasonable time, where there1 is no fixed boundary ascertaining the small quantity contemplated by the parties; but after such a lapse of time as has occurred, and after so many transfers, my opinion is, that the claim set up by the defendant, if he even had derived title from TV. Armstrong would not, at this day, be sustained in either court.
Judgment reversed, and venire facias de novo awarded,-