## DEN D. HARING v. VAN HOUTEN.

1. Where a deed bounds the property conveyed on a public highway, on a question of boundary the return of the surveyors laying out such highway is competent evidence without showing their appointment, or if the proceedings of their appointment are void ; the only question is, where is the highway, not whether it is legally laid out.

2. If the language of a deed leaves it doubtful which of two boundaries it calls for, the practical construction given to it by the parties themselves in taking possession is competent evidence to show where the line is.

3. Where a line is not settled, acquiescence by the parties concerned, without a positive agreement and for a less period than twenty years, will fix the boundary.

Den d. Haring v. Van Houten.

4. Where no doubt would arise as to the true location of a lot from the construction of the grant, yet if the grantee, by his acts in locating his lot, has fixed his lines differently, and induced others to act upon such erroneous location, he will be bound by such location, and will by his *acquiescence* be prevented from disputing the boundaries thus fixed, although such acquiescence be only for a year.

5. If a deed calls for only one monument, and that is the corner of two streets as its beginning point, and these streets are laid out, but not opened and fenced off, then the beginning point called for is the mathematical point designated in the surveys ; but if the streets had been opened, and the corner built upon, and thus ascertained, it would properly and more naturally refer to such actual corner.

Rule to show cause.

This was an action of ejectment tried before Mr. Justice Whitehead, at the Passaic circuit, in March, 1847, when a verdict was found for the plaintiff. The land sought to be recovered was a strip in dispute between the owners of two adjoining lots, in the township of Paterson, in said county : the lessor of the plaintiff claimed that his lot went to a line ten feet east of that claimed and occupied by the defendant.

On the trial it appeared in evidence that both parties held adjoining lots under the same title. In 1831, Messieurs Collet and Pennington, having purchased certain land in or adjoining to the town of Paterson, divided it into lots, for the purpose of sale, and caused a map to be made of the same, which map was given in evidence. The lot of the lessor of the plaintiff, beginning at the northeast corner of High and Willis streets, being sixty-nine on Willis, and running north one hundred feet on the easterly side of High street, was sold by Collet and Pennington to one Weight, by deed dated 17th December, 1835, under whom the plaintiff held by subsequent conveyance. The defendant's lot adjoined the easterly side of the lot of the plaintiff, being 25 feet on Willis, and 100 feet in depth. These lots, with others, were sold in conformity with the map so made by Collet and Pennington, and there was evidence to show that they were located according to the present occupation, and on the supposition that a fence on the westerly side of the plaintiff's lot was the boundary, or easterly side of High street. The case of the plaintiff proceeded on the ground that the true easterly line of that street was ten feet farther east than that

fence, and that his lot should be located accordingly, to which he insisted the lots adjoining should conform. Under this view, the plaintiff claimed ten feet off of the lot of the defendant, as now occupied by him, and, as the defendant alleged, it had been occupied since the sale by Collet and Pennington.

The plaintiff offered and read in evidence the return of High street, as laid out in 1821, which was objected to by the defendant, upon grounds not now necessary to notice. The road in the return called for a course of south 3° east (but which appeared to be a mistake for south 3° west), and was laid three rods wide. There was evidence to show that if run, according to the return, in a straight line, and of the width called for, the easterly side of the street would be ten feet within the fence on the westerly side of the plaintiff's lot, which true line of the street the plaintiff insisted showed the commencement of his lot.

The defendant, on the contrary, insisted on the trial, that the line had been fixed for twenty-six years, the lots sold built upon according to a location then made, and that the line could not now be altered, even if the true line of the street should be shown to be otherwise than then supposed.

The judge in substance charged the jury, that the fence, being on the same line as when the location of these lots was first made by Collet and Pennington, and having been recognised as the line of the street and the westerly side of plaintiff's lot, must now be held as the line; that the public had acquiesced; that parties had bought and sold on the supposition that the fence was the line, and that it must be so held in the present controversy.

Notwithstanding the charge of the judge, the jury rendered a verdict for the plaintiff. A rule was taken to show cause why that verdict should not be set aside, and a new trial granted.

Argued before the CHIEF JUSTICE, and RANDOLPH and CARPENTER, Justices, by *Vandervoort* and *A. S. Pennington*, for the rule, and *Hopper*, for the plaintiff, contra.

GREEN, C. J. This action was brought to recover a strip of land, ten feet in width by one hundred feet deep, in the town

of Paterson.  Upon the trial, the whole question resolved itself into a mere question of boundary.  The plaintiff and defendant were the owners of adjoining lots in the town of Paterson, both fronting south upon Willis street.  Both titles had a common origin ; the plaintiff's title was the older.  The plaintiff's lot was situated at the northeast corner of Willis and High streets, being bounded on the West by High street.  The plaintiff's lot, in the original deed and in all the subsequent conveyances, was described as follows :  " Beginning at the northeast corner of High or Strait street and Willis street ; thence running easterly along Willis street sixty-nine feet ; thence northerly, at right angles to Willis street, one hundred feet ; thence westerly, parallel with Willis street, about seventy-four feet, to High street ; thence southerly along said street to the place of beginning."  The defendant's lot adjoined the plaintiff's on the east, and was described as " beginning at a point 69 feet from the corner of High and Willis streets ; thence running north, 6 degrees east, 100 feet ; thence south, 82 degrees east, 25 feet ; thence, parallel with the first course 100 feet, to Willis street ; thence westerly, along Willis street 25 feet, to the place of beginning."

The controversy related entirely to the boundary line between the two lots, and that depended upon the true location of the lot of the plaintiff.

The plaintiff, in support of his title, showed a conveyance from Mark W. Collet and A. S. Pennington to Peter D. Weight, on the 17th December, 1835 ; and through Weight, a title vesting in himself, on the 1st of June, 1842.  He also gave in evidence a certified copy of the return of six surveyors of the highways, bearing date on 16th June, 1821, laying out High street as a public highway, three rods wide and twenty-one chains in length.  He further proved the precise location of the western line of the street as laid out by the surveyors, and that, allowing the full width of three rods to High street, at its intersection with Willis street, and fixing the plaintiff's beginning corner at that point, his length of chain (69 feet) on Willis street would carry his line ten feet beyond the line, as claimed by the defendant, and include the premises in dis-

pute. That High street was opened soon after it was laid out, in 1821, to its full width of three chains from its beginning point, on Broadway, to the north line of the Collet and Pennington lot, which was about 350 feet north of Willis street. From that point to Willis street the fence on the east side of the street encroached upon the highway, gradually increasing in width, until at the intersection of Willis street, at the corner of plaintiff's lot, the encroachment was ten feet one inch. The plaintiff also offered in evidence a deed from George Van Ryper to Collet and Pennington, dated 11th July, 1831, for a lot (including the plaintiff's lot) extending 4 chains 67 links on Willis street, and 5 chains 68 links at right angles thereto; also a map of the said premises, made by Collet and Pennington, on which the land was divided into lots for sale, and on which High street was represented as three rods wide by measurement.

It further appeared in evidence, that High street along the Collet and Pennington lot, had never been open to its full width; that the fence, from the time the street was opened, had always stood where it now does; that the successive owners of the plaintiff's lot, Van Ryper, Collet and Pennington, and Haring himself, had claimed and possessed the land to the extent of the alleged encroachment; that some years prior to the commencement of the suit, the plaintiff had built a house on the rear of his lot, fronting on High street, which projected about five feet beyond the true line of the street, having a court yard in front, which encroached eleven feet five inches on the street.

The dwelling house of the plaintiff, at the corner of High and Willis streets, was built by Francis Van Blarcom, about the year 1823, and the fence on High street set by him about where it now stands. The house itself is not within the line of the street. At the time of the conveyance to Collet and Pennington, in 1831, this was the only house on the lot east of High street. A large number of lots have since been sold, making the fence, as it stood, the line of High street. The lots on Willis street have all been sold, as far as the title of Collet and Pennington extended, and several of them built upon.

Some four or five years previous to the trial, Haring, the plaintiff, moved the division fence between himself and the defendant farther east. After the defendant purchased, in 1835, his lot was surveyed at his request. The surveyor fixed the division line between the parties ten feet four inches east of where it now stands, so as to give the whole of the disputed premises to the plaintiff, and the defendant built his house just clear of the line, as the surveyor located it.

The judge charged the jury, that if the fence on High street had been standing in the same place twenty-five years, the public having acquiesced during that period, and the parties having bought in reference to that as the line, the fence should now be considered the easterly line of the street, and that both the public and the owners of the land were concluded by it. The jury rendered a verdict for the plaintiff. The defendant asks a new trial, upon the grounds, among others, that the verdict is against the law, against the evidence, and against the charge of the court.

Upon the trial the plaintiff showed an undoubted title to a lot of land at the corner of High and Willis streets, and extending from the corner sixty-nine feet, easterly, upon Willis street. The defendant showed title to the lot on Willis street, adjoining the plaintiff on the east. The only question between them related to the true location of the boundary line between them. The plaintiff has within his enclosure sixty-nine feet, his length of line upon Willis street. But it was insisted, and attempted to be proved upon the trial, that the lot is located ten feet too far west, encroaching that distance upon High street, and if the street is opened to its proper width, it will take ten feet from his front. He sought, therefore, to fix the location of his land ten feet farther east, and to encroach thus far upon the possession of the defendant. The only question then was, what was the true location of the plaintiff's lot? The only monument referred to, to ascertain the location, is the beginning corner, which is described as " the northeast corner of High or Strait street and Willis street. That language may refer either to the point of intersection of the lines of the street, as laid out, or to the actual corner of the street, as actually

opened, and improved or occupied. If the streets had not been opened, or, if opened, if no fences or buildings had been erected to designate the position of the sides of the street, the language must of necessity have referred to the mathematical corner, and the beginning must have been ascertained by running the lines of the street as laid out to the point of intersection. On the other hand, if the streets had been opened and improved, if the corner had been built upon, and thus clearly ascertained, the language of the deed might with propriety and more naturally refer to the actual corner as it existed, than to any imaginary corner to be ascertained by running the streets according to the actual survey. In common parlance, in speaking of the corner of a street, reference is had to the actual corner as it exists, and as it has been defined by buildings or improvements. On the part of the plaintiff, it was insisted that the language of the deed had reference to the true corner of the streets, to be ascertained by running the lines of the streets, as laid out. And, for the purpose of establishing this point, he offered in evidence the return of the street as a public highway, and proved by parol its location. This evidence was objected to by the defendant, but admitted by the judge, and its admission is one of the grounds assigned for a new trial. The evidence was clearly competent, even though the proceeding of the surveyors and the return of the road were illegal and void. The question was not, whether the road was a legal highway, but where it *was*, and what was the intent of the parties to the deed in referring to the corner. The parol evidence was introduced not to contradict or vary the instrument, but to determine its application, to fix the locality, and to remove a latent ambiguity, for which purposes parol testimony is always competent. 1 *Greenl. Ev.* § 286. The question is a pure question of intent. To what corner did the parties to the deed refer in making the conveyance? What land did they intend to convey? Where did they intend to locate the lot? That this intent must govern in fixing the location, admits of no dispute; it is too clear to require authority in its support.

The language of the deed being doubtful as to the begin-

ning corner, and the consequent location of the plaintiff's premises, the construction given by the parties themselves, as shown by their acts and admissions, is deemed to be the true one, unless the contrary be clearly shown ; and, parol evidence of the acts and admissions of the parties is always admissible to show the practical construction given to the deed by the parties themselves. When the language of the deed is doubtful, a practical location . by a grantee, and his recognition of a line, even though that location be erroneous, and give him less land than the actual courses and distances in his deed, may bind the party, and conclude his rights. The authorities upon these points are numerous. *Stone* v. *Clark*, 1 *Metc.* 378 ; *Adams* v. *Frothingham*, 3 *Mass.* 362 ; *Codman* v. *Winslow*, 10 *Mass.* 149 ; *Rockwell* v. *Adams*, 7 *Cowen* 761 ; *Jackson* v. *Smith*, 9 *John.* 100 ; *Jackson* v. *Ogden*, 7 *John.* 238.

To conclude the parties' rights, it is not necessary that there should have been an actual agreement between the adverse claimants, or that the practical location should have existed over twenty years. It does not rest either upon agreement or upon the doctrine of prescription or legal limitation. In *Jackson* v. *Ogden*, 7 *John.* 246, Vanness, J., said, "The extent to which we have hitherto gone is, that when two persons, already having a title, have settled the line of division between them, or when one having title has made an actual location, according to what he supposed to be his true line, and his neighbors' have acquiesced in such location for a considerable length of time, that the boundary thus established shall remain undisturbed." This was a dissenting opinion, because he supposed the majority of the court went beyond the rule thus laid down ; but the doctrine thus declared was subsequently approved in *Rockwell* v. *Adams*, 7 *Cowen* 761 ; 6 *Wend.* 467. In the latter case the court said, "Reasons of propriety and policy forbid that a party having located his premises, and thereby induced others to purchase and improve accordingly, should afterwards be permitted to allege mistake, and extend his possessions so as, perhaps, to take away those very improvements which were made upon the faith of his previous act." *Rockwell* v. *Adams*, 6 *Wend.* 469.

There was evidence upon the trial to show that the fence along High street, on the west of the plaintiff's lot, was set by Francis Van Blarcom, who built the plaintiff's dwelling house, as early at least as 1823, and probably in 1821, soon after the street was laid out, many years before the defendant purchased, and more than twenty years before the commencement of the suit; that each successive owner of the premises claimed and occupied to the line thus established; that the fence thus erected constituted, in fact, the corner of High and Willis streets at the time of the conveyance by Collet and Pennington to Weight, and at the time of the conveyance by the sheriff to the plaintiff, in each of which the corner of the street is called for as the beginning corner of the plaintiff's premises; that from the time of the conveyance to the plaintiff, in 1842, down to the time of the trial, the plaintiff had held and occupied the land up to the line and corner thus designated, and had built upon it beyond the line, which it is now insisted is the boundary of his lot. The question, it must be remembered, is not, where is the true line of the street, but where is the land which was conveyed by Collet and Pennington to Weight, mortgaged by him, and by the sheriff conveyed to the plaintiff. Now when is it shown that the plaintiff, and those under whom he holds, have for more than twenty-three years claimed, and held to a given point, as the limit of their possession and the corner of the street, when he had himself built upon the land, and holds and enjoys it without molestation, shall he be permitted to say that his land is elsewhere? that the land which he has long quietly held and improved is not covered by his title, and thus attempt to shift his location upon the land of the defendant, and oust him of his possession? The conduct of all the proprietors and of all the parties to these conveyances, both grantors and grantees, show clearly, that by the corner of High and Willis streets, they meant not an imaginary corner, but the corner as it was actually laid out and as it existed at the time of the conveyance.

But if there were doubts upon the point, nay if it were clear that the plaintiff's lot was located erroneously and against the intention of the parties to the conveyance, I am of opinion

that the acts of the plaintiff since he came into possession, and the influence of those acts upon the rights of others, conclude him as to the location. If the plaintiff, upon the purchase of his lot, had erected a building sixty-nine feet in length, covering his entire front, and if the entire block had subsequently been sold and built upon, all the lots conforming to the plaintiff's location, and depending upon it, it would not be pretended that the plaintiff could afterwards, upon discovering that his building encroached upon the street, oust the next adjoining proprietor, and he the next, thus unsettling the titles throughout the entire block. If the mistake were discovered within a year after it occurred, and after the buildings were erected, it would be too late to correct it. The party has fixed his own locality. He had not only knowingly permitted his neighbors to improve, but by his own act has induced them to improve upon lands, the title to which he now claims as his own. To what extent these objections apply to the plaintiff in the present case does not clearly appear by the evidence, but it does appear that a large number of lots have been sold in the same block since the sale and location of the plaintiff's lot; that these lots have been built upon and improved, and that if the line is altered, the titles of many of these lots will be disturbed, and in some instances buildings erected will be intersected by the lines of division.

Nor, in my judgment, is the case altered if the judge erred in his opinion, that the right of the public to open the street to its full width was barred by lapse of time and the adverse enjoyment of the plaintiff and of those under whom he claims. Admitting the right of the public to open the street, (upon which it is unnecessary here to express any opinion), nay, admitting that the street be actually opened to its entire width, and a part of the plaintiff's lot to be thereby appropriated to public use, it surely can confer upon the plaintiff no right to redress his own loss at the expense of his neighbor, or to attempt to change the location of his lot, which by his own act he had determined. In such case, indeed, his claim would have the semblance of justice, however destitute of law it might be to support it. But it is worthy of notice in the present case, that

there is no pretence that the plaintiff has lost, or is in danger of losing, any part of his land by a mislocation. There is no evidence of any attempt to open the street to its full width or to encroach upon the possession of the plaintiff. He holds the entire quantity of land called for in his deed unmolested, and precisely where he, and those under whom he claims, fixed its location. To permit him, under such circumstances, to shift the location of his lot, and to eject the adjoining proprietor upon the pretext that his location is an encroachment upon the highway, has neither law nor justice to support it. I am of opinion that the verdict is against law and against the charge of the court, and must therefore be set aside upon the payment of costs.

It is proper to add, that the state of the case which has been furnished the court is quite imperfect. There are obviously chasms and imperfections in the testimony. It may therefore, be that the facts as stated are not in entire consistency with the evidence, as it appeared upon the trial. Enough, however, appears to warrant the conclusion that the jury erred, and that the verdict must be set aside.

RANDOLPH, Justice, concurred.

CARPENTER, J. There was no question made but that the lots of the respective parties were sold, and intended to be located in conformity to the map of Collet and Pennington. · The deeds of the lessor of the plaintiff and of the defendant, for their respective lots, refer to this map, or at least the descriptions in those deeds were made in conformity thereto. The map calls for the easterly side of High street, which it makes the westerly boundary of the lot now held by the plaintiff and the basis of the whole range of adjoining lots, including that of the defendant. Now, as I understand the testimony in the case, whatever may be the true line of High street, upon an extension of that street with mathematical exactness from its commencement to its termination, yet in locating these lots the fence was treated as the line of the street and as the westerly boundary of the plaintiff's lot. The lots were laid out by Collet and Pennington on this supposition, as appears from the

testimony of Mr. Pennington, who was examined as a witness. The respective parties, or those under whom they claim, appear to have held according to such original location from the time of the sale by Collet and Pennington to the time of bringing this suit, a period of more than twenty years. A long acquiesence, even in an erroneous location, will conclude parties. Considerations of public policy forbid that such errors should be corrected after long acquiesence, where, as in the present instance, the consequence would be a corresponding change in the possession of a whole neighborhood. The judge, therefore, was right in directing the jury that the fence must be considered, in this controversy and between these parties, as the line of the street. But in this case the location can scarcely be considered as erroneous in respect of these parties, who are bound by the action of the vendors under whom they both claim, however erroneous their action may have been in reference to the true line of the street.

The rights of the plaintiff and of the public respectively, in reference to the line of the street, are not drawn in question, and need not now be considered. The verdict, according to my judgment, was clearly against the weight of evidence as well as contrary to charge of the judge. I concur in the opinion that the rule should be made absolute.

New trial granted.

CITED *in Smith* v. *State,* 3 *Zab.* 140–142; *Jackson* v. *Perrine,* 6 *Vr.* 142–143–148; *De Veney* v. *Gallagher,* 5 *C. E. Gr.* 38.