C. J. HOLLAND v. FLORIDA REAL ESTATE COMMISSION, *ex rel.* C. D. LINESBAUGH.

178 So. 121.

Division B.

Opinion Filed January 8, 1938.

*Stapp, Gourley, Ward & Ward,* for Appellant;
*W. H. Poe* and *L. E. Broome,* for Appellees.

CHAPMAN, J.—On February 25, 1937, there was filed before the Florida Real Estate Commission an information in two counts by C. D. Linesbaugh, a resident citizen of Florida, against O. L. Holland, a registered real estate broker, then residing at 1627 Alton Road, Miami Beach, Dade County, Florida. The first count alleged that At-Bay Realty Company was the owner of Lot 10, Block 13, Normandy Beach South Subdivision, Dade County, Florida, and was represented in Dade County Attorney Louis Heiman; that E. J. Masters was a salesman for Holland; that

the salesman obtained a listing and shortly thereafter sold or agreed to sell to Mrs. Sears the lot above described for $1,650.00, and Mrs. Sears signed the sales agreement and paid $500.00 as earnest money; that she subsequently paid to O. L. Holland $1,075.00, and the payment of the commission was agreed upon by O. L. Holland and Mrs. Sears. After receipt of the entire purchase price of the lot O. L. Holland advised her not to carry out the trade as he could find something better for her. He had negotiated the sale and received the agreed purchase price for the property and in advising Mrs. Sears not to carry out the trade he perpetrated a fraud on the At-Bay Realty Company as a real estate broker under the laws of Florida.

Count two alleges that on September 16, 1935, E. J. Masters, an employee of defendant, interested Mrs. Sears in lands therein described and she agreed to pay therefor $1,650.00, and shortly thereafter defendant assumed charge of the negotiations; that he received from her $1,650.00, less his commission, and failed and neglected to close or report the same to At-Bay Realty Company, and while having the money in his possession, property of Mrs. Sears, omitted to close the trade, advising her that the purchase of the lot was not a sound investment and feigned that a better purchase was possible, but would require more money, which she supplied, and placed with defendant additional funds, making $2,400.00. On January 1, 1936, defendant induced Mrs. Sears to accept his note in the sum of $2,-400.00 in lieu of the money and neither the lot nor apartment house was purchased with the funds of Mrs. Sears, but defendant fraudulently converted the same to his own use. The information seeks a revocation or suspension of registration of O. L. Holland as a real estate broker. The information was filed under Section 4087 C. G. L. 1927.

On March 22, 1937, answer was filed to the information to the effect that the defendant had no special listing as to the described land, no abstract or deed was tendered by At-Bay Realty Company; that the trade was called off by Mrs. Sears; additional investments were sought by Mrs. Sears through the defendant, and failing to find a suitable investment the money was loaned to defendant which was better business than to make an investment in an apartment house and assume payment of a large mortgage indebtedness; that she advanced additional money to defendant and took his note in the sum of $2,400.00, bearing interest due six months after January 1, 1936; that he visited her in a social way some two or three times each week until May, 1936, and no demand was made for the money until after maturity of the note when he was induced to believe the note could be renewed upon maturity. The note matured and had been reduced to judgment. Other allegations appear in the answer unnecessary to recite.

On March 26, 1937, an examiner was appointed under Section 4090 C. G. L. to take all the testimony of the parties and report the same.

The Florida Real Estate Commission, under Section 4092 C. G. L., filed its petition and certified the record with all exhibits to the Circuit Court of Dade County, Florida, for further proceedings according to law. On August 27, 1937, the Honorable Paul Barns entered an order revoking the defendant's registration as a real estate broker and restrained and enjoined him from operating as a broker or salesman. An order denying a petition for rehearing was entered September 7, 1937. An appeal from the final decree was entered September 10, 1937, under Section 4099 C. G. L., the record perfected and the suit is here for review on several assignments for a reversal.

A study of the record shows that each assignment rests largely on the findings of the Chancellor on questions of fact rather than questions of law. The statutes under which the information was filed have been sustained by the decisions of this Court. In a concurring opinion of Mr. Justice STRUM in the case of State, *ex rel.* Davis, v. Rose, 97 Fla. 710, text page 747, 122 Sou. Rep. 225, when discussing the purpose and intention of the Act, he said:

"The purpose of the statute under consideration is to stabilize real estate transactions and to protect the public against financial loss through future repetition of unscrupulous practices in transactions involving the sale and purchase of real estate. Experiences of the recent past in Florida have demonstrated that the methods followed by many in such dealings, without the restraint of this statute, have readily adapted themselves to the perpetration of deception and imposition. See Goldstein v. Maloney, 62 Fla. 198, 57 So. R. 342; People v. Beaks Dairy Co., 119 N. E. 118, 3 A. L. R. 1267. The statute attempts to accomplish the result stated by permitting only those who possess certain qualifications of aptitude, ability and integrity to engage in the business of real estate broker.

"In his fiduciary relationship to his customer, the broker invites, and usually receives, a high degree of confidence and trust, in the bestowal of which it is competent for the State to protect the customer by reasonable regulation upon the broker. Quinn v. Phipps, 113 So. R. 419. It is appropriate and lawful, therefore, that adequate, but reasonable, special qualifications, including that of residence in Florida and consequent continued amenabiliy to the process of our courts, be exacted of those who would engage in that business. See 12 C. J. 1120. The reasons for the qnualification of residence are manifold, sound, and under the circumstances are lawful, in view of the experiences of

the recent past in Florida when many disingenuous practices and impositions were perpetrated by unscrupulous dealers, mostly of nebulous or transitory residence, upon credulous and unwary purchasers."

See Florida Real Estate Commission, *ex rel.* Holly Hill Grove & Fruit Co., v. Crisp, 111 Fla. 600, 149 Sou. Rep. 543, 566.

The evidence shows the defendant became acquainted with Mrs. Sears through his salesman, E. J. Masters. She was satisfied with the lot shown her and made a $500.00 payment and signed a purchase agreement to pay the balance due when terms could be worked out with At-Bay Realty Company when it was shown by a telegram that the offered amount was acceptable and after the full purchase price, less a commission, had been paid to defendant it was concluded by defendant and he so represented and stated to Mrs. Sears that a better investment could be found, and several pieces of property were discussed between the parties. O. J. Holland was at the time single and Mrs. Sears a widow, and they continued in search of a suitable investment until January, 1936, when he delivered to her his note for the full $2,400.00, representing the full amount of money left by her with him for investment purposes. They continued to see each other two or three times each week until May, 1936. Defendant admits the receipt of the money and contends it was a loan for which he gave her his note, while Mrs. Sears asserts the money was delivered to him for investment purposes. Shortly after the receipt of the first payment in September, 1935, the defendant deposited the money at his bank to his personal account and checked upon it whenever he desired money and then made trips to Chicago, Washington, Atlanta and Birmingham, and it is a reasonable inference that Mrs. Sears' money was used to pay his expenses on these trips. There

is ample evidence in the record to support the finding of the Chancellor as expressed in the first decree. It cannot be asserted here that the Chancellor saw the witnesses, observed their demeanor when on the stand or heard their testimony, but due weight and consideration of the finding of ·fact by a Chancellor is given by this Court and the rule is well expressed in the case of Harrison v. Farrington, 95 Fla. 769, 116 Sou. Rep. 497, when this Court said:

"We also bear in mind the oft reiterated rule that while the findings of the chancellor on the facts where the evidence is heard by him, and the witnesses are before him, are entitled to more weight in the Appellate Court than where such findings are made in a cause where the testimony was not taken before the chancellor, yet in either case the chancellor's findings should not be disturbed by an Appellate Court unless shown to be clearly erroneous. Sandlin v. Hunter Co., 70 Fla. 514, 70 South. Rep. 553; Travis v. Travis, 81 Fla. 309, 87 South. Rep. 762; Lucas v. Wade, 43 Fla. 419, 31 South. Rep. 23.

"On the other hand, where a decree is manifestly against the weight of the evidence or contrary to and unsupported by the legal effect of the evidence, then it becomes the duty of the Appellate Court to reverse such a decree. Carr v. Leslie, 73 Fla. 233, 74 South. Rep. 207; Florida National Bank v. Sherouse, 80 Fla. 405, 86 South. Rep. 279; Gill v. Chappelle, 71 Fla. 479, 71 South. Rep. 836; Lightsey v. Washington Park Properties, 112 South. Rep. 555."

The evidence shows the defendant in good faith contacted Mrs. Sears and husband and offered $2,650.00 in cash for a full payment of the note after suit was filed, which was refused. The note was reduced to judgment and she received the approximate sum of $1,100.00. It appears that she was satisfied with the money being with the defendant until shortly prior to her marriage and her

letter to the defendant dated July 9, 1936, was her first posi-
tive insistence upon its return. The responsibility of ad-
ministering the law as between litigants and to see that
right and justice shall prevail rests upon this Court. Our
duty is prescribed by Section 4, Declaration of Rights of
the Constitution of Florida, viz.:

"Section 4. All courts of this State shall be open, so
that every person for any injury done him in his lands,
goods, person or reputation shall have remedy, by due course
of law, *and right and justice shall be administered without
sale, denial or delay.*"   (Emphasis ours.)

In the application of right and justice to the law and facts
in this case we can fully agree with the findings of the lower
court upon the facts. The efforts of the defendant to re-
turn to Mrs. Sears the money is an extenuating circum-
stance, coupled with the recovery of $1,100.00 of the origi-
nal amount possibly was overlooked when the order re-
voking the registration of the defendant as a real estate
broker was entered. From all the facts disclosed by the
record we think that substantial justice is awarded when a
suspension is made for a reasonable length of time not to
exceed twelve months.

Section 4637 C. G. L., 2918 R. G. S., viz.:

"It shall be the duty of the court on an appeal or writ
of error to examine the record, to reverse or affirm the
judgment, sentence or decree as the court below ought to
have given, or as to it may appear according to law."

The decree appealed from is reversed with directions for
further proceedings not inconsistent with this opinion.

It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in
the opinion and judgment.