LEON L. BURNSON, RELATOR, v. ALTON V. EVANS, RESPONDENT.

Argued May 6, 1948—Decided August 18, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the relator, *Harry L. Shure.*

For the respondent, *Alton V. Evans, pro se.*

The opinion of the court was delivered by

Heher, J. The Civil Service Commission held a competitive examination in the classified service under *R. S.* 11:1–1, *et seq.,* to fill a vacancy in the clerkship of the District Court of the Second Judicial District of the County of Monmouth. Relator was the first of the three eligibles certified to the judge of the court, as the appointing authority; one Roy Bowman was second. The former has the status of a disabled war veteran, and is entitled to the statutory priority as such, unless otherwise disqualified. *Pamph. L.* 1946, *ch.* 227, *p.* 837, amending *R. S.* 11:27–3, 11:27–4, 11:27–5. The latter is a war veteran without a record of disability incurred in the line of duty. One of the qualifications prescribed by the Civil Service Commission for admission to the examination was residence in the territory comprising the judicial district. Relator was then and is now a resident of the Borough of Interlaken; and on the assumption that this municipality was not, at the time of the examination, and is not now comprised in this judicial district, and under *R. S.* 11:22–7 relator was therefore ineligible, Judge Evans appointed Bowman to the clerkship. Contending that the findings of the Civil Service Commission are immune from collateral attack, and the designation thus made violates what he conceives to be a peremptory right under the statute, relator seeks a writ of *mandamus* commanding his appointment to the clerkship, now in the possession of Bowman, who is exercising the functions charged by law upon the incumbent. Bowman has not been made a party to the proceeding.

The point of residence arises thus: This judicial district was established by chapter 39 of the laws of 1913. *Pamph. L., p.* 67. The territory embraced in the district included the Township of Ocean. In 1922, the Borough of Interlaken was incorporated from territory within the boundaries of the Township of Ocean. *Pamph. L.* 1922, *ch.* 65, *p.* 118. By an amendment of the act of 1913, adopted in 1925, the territorial boundaries of this judicial district were delineated anew to include nine additional municipalities, eight of which were incorporated long before the passage of the act of 1913, and one thereafter, although other subsequently incorporated

municipailties besides the Borough of Interlaken were omitted. The Township of Ocean was included within the revised jurisdictional area, but there was no mention of the Borough of Interlaken, which was no longer a part of the township. *Pamph. L.* 1925, *ch.* 129, *p.* 352. There were twenty-eight municipaiities of the county not included in either the first or the second judicial districts when this revision of boundaries was made. In the Revision of 1937, the territorial jurisdiction of this judicial district was continued as theretofore. Chapter 39 of the laws of 1913, as amended by chapter 129 of the laws of 1925, was saved from repeal. The municipalities comprising the district were again enumerated; but the Borough of Interlaken was not included. *R. S.* 2:8–4, 2:8–5, 2:8–6.

The relator has misconceived his remedy. The clerkship in question is an office. It is so denominated in the statute. The District Courts are courts of record. The statute directs that the clerk "shall hold office during the pleasure of the appointing judge or until the appointment or qualification of his successor;" and he is required to take an oath to perform the duties of his "office." *R. S.* 2:8–8, 2:8–18, 2:8–19.

Under the present judicial system, the title of a claimant in possession of an office is triable only by *quo warranto.* When an office is full *de facto,* the incumbent claiming it under color of right, *quo warranto* and not *mandamus* is the proper remedy to test the claimant's title. And an office is deemed full *de facto* whenever a person elected has been admitted to it, whether the election was or was not of such a character that it could be supported by law, unless there is illegality of the election, by virtue of which the incumbent gained entrance to the office, which is not "consistent with honesty of purpose. Elections based upon mistakes of fact or misconceptions of law may impart a color of right which will bar the allowance of a *mandamus,* but palpable disregard of law renders the action by which an office is seized merely colorable, and, in a clear case, will be brushed aside as affording no obstruction to the exercise of a plain legal duty." *Leeds* v. *Atlantic City,* 52 *N. J. L.* 332. Lord Mansfield suggested that the proper inquiry is whether the election was

merely colorable and clearly void, in which event *mandamus* is allowable. *Rex* v. *Bankes, 3 Burr.* 1452. The object of prosecuting an information in the nature of a *quo warranto* is to have the possessor of the office adjudged guilty of usurpation and ousted. *Bradshaw* v. *City of Camden, 39 N. J. L.* 416. Where the incumbent of an office was ineligible at the time of his appointment, the proper method to oust him is by *quo warranto.* *Magner* v. *Yore, 75 Id.* 198; *Shibla* v. *Wall Township, 136 Id.* 506. And the incumbent is a necessary party to a proceeding instituted to determine his title to the office. *Leeds* v. *Atlantic City, supra.*

Here, the office is full *de facto.* The appointment upon which the incumbent relies is not palpably deficient in legal warrant, and thus his possession is *de facto* and not merely colorable and clearly void. Indeed, it would seem that relator is plainly ineligible to the office for want of the residence made a *sine qua non* by the statute. In the geographical reconstitution of the judicial district effected in 1925, the Township of Ocean was included, but the Borough of Interlaken was not. Obviously, the Township did not then embrace the territory which had theretofore been incorporated in the borough. To hold that the borough was thereby comprised in the judicial district in question would be to indulge in pure speculation as to the legislative design and to give effect to what is deemed to be a wholly unexpressed intention. The intent of the lawgiver is to be found in the language used. "Cases cannot be included or excluded merely because there is intrinsically no reason against it. Even when a court is convinced that the legislature really meant and intended something not expressed by the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of language which is free from ambiguity." *Lewis' Sutherland Statutory Construction* (2d ed.), § 366. The legislature is deemed to mean what was plainly expressed. An unexpressed legislative intention is ineffective and unenforceable. An intent based upon surmise or external considerations is inadmissible. *Ibid.,* § 388.

The finding of the Civil Service Commission as to residence is not *res judicata.* The action of that body is not subject to

collateral attack as to rating, but it is not conclusive as to residence, for residence is a continuing peremptory statutory qualification that is prerequisite to the right of appointment. Residence may change after the examination, or even after the certification; and where the residential status is lost, the right to appointment terminates. "Eligibility" is so conditioned by section 11:22–7, cited *supra*. The case of *Civil Service Commission* v. *Rife*, 128 *N. J. L.* 503, is not in point. Apart from the factual differences, significant changes in the pertinent provisions of the Civil Service Law were effected by chapter 227 of the laws of 1946, cited *supra,* particularly in *R. S.* 11:27–5. *Mandamus* would be futile in the circumstances. The mandatory appointment of relator would not settle the issue of title nor oust the incumbent. As said, the incumbent is not a party to this proceeding.

The rule to show cause is discharged, without costs.