BOROUGH OF AVALON, PLAINTIFF, v. EDWARD J. NEIT-
HAMMER, DEFENDANT.

Cape May County Court

Decided November 29, 1952.

*Mr. Robert K. Bell,* attorney for plaintiff.

*Mr. Florence E. Josephson,* attorney for defendant.

TENENBAUM, J. C. C.   The defendant, Edward J. Neithammer, appeals *de novo* from a conviction before the Municipal Magistrate of the Borough of Avalon for a violation of its Ordinance No. 235 as amended by Ordinance No. 264.

The pertinent portion of the original ordinance is as follows: "No person * * * engaged * * * for the purpose of collecting garbage * * * shall dump, place, keep or store * * * garbage * * * within * * * Avalon." The amended ordinance provides: "No person * * * shall dump, place, keep or store garbage * * * within the territorial limits of the Borough of Avalon."

At the hearing upon appeal the defendant admitted on the day in question he had dumped a can of garbage in a hole in the ground in the rear of his residence, which hole he had dug for that specific purpose. He had intended to cover the garbage with earth to enrich the soil as he had done on many occasions before, but was apprehended before being able to complete the operation.

He seeks to escape from the prohibition ordained on the assertion that his conduct was not within the intendment of the ordinances aforementioned.

I have no doubt that the method employed by this defendant to enrich his soil was inoffensive.

Rackham Holt in his book on the life of George Washington Carver, the great scientist, discusses with infinite detail the inexpensive and satisfactory manner of urging the land to greater productivity by the use of organic matter rather than by chemicals.

A. W. Martinez's story in *Colliers* magazine of recent date of the great success of Dr. Ehrenfried E. Pfeiffer of Oakland, California, who transformed the city's garbage "into fertilizer—a sweet-smelling black earth that would perform

virtual miracles for the land," was in a small way emulated by the defendant.

Dr. Selman A. Waksman, a recent Nobel Prize winner and the discoverer of streptomycin, in his book *Humus* says that,

"The mere presence of organic matter is sufficient to depress the action of disease organisms. Something in the organic matter has that power—whether it is some anti-biotic organisms, or something as yet unknown cannot be said with certainty. If you have plenty of organic matter in the soil under proper conditions of decay and observe the necessary period of waiting before planting on raw matter, one need not fear disease."

Garbage, the mere mention of which offended the olfactory sense, has now reached majestic stature in agricultural importance. Sterile fields are made prolific, yielding the "bumper crop."

The old adage of one man's meat may be another's poison has some logical application to the line of demarcation between what may be of great advantage in the rural areas may be extremely harmful and dangerous in the urban areas.

True, the defendant's high motives and love of Nature's good earth instilled in him the desire to observe the recognized method to produce odorless garbage, and thereby transform his barren yard into a veritable paradise.

Yet, without speculating into the realm of uncertainty, there are those less learned than the defendant in the subject matter of organic fertilizer, but jealous of his success, would attempt to emulate Mr. Neithammer with disastrous results to the pure air of Avalon. Stimulated, rarified and purified as it is by the gentle salt-zephyrs emanating from the broad expanse of the Atlantic Ocean—a boon to mankind during the sultry summer days and ravager of the wintry snows—thereby stunting the community's growth, rather than cause it to flourish like the green bay tree.

I am not unmoved by the high motives which actuated the defendant in his conduct which, nonetheless, finds this defendant before the bar, but established precedent directs my course.

■■ The language employed in the ordinance is clear and its meaning and application plain; thus there is no room for judicial construction. Such was the Supreme Court's pronouncement in *McGowan v. Metropolitan Life Insurance Co.*, 57 *N. J. L.* 390, 30 *A.* 433, affirmed 60 *N. J. L.* 198, 38 *A.* 671 (*Sup. Ct.* 1894), and followed with approval in *White v. State Tax Board of Appeals*, 123 *N. J. L.* 350, 8 *A.* 2d 819 (*Sup. Ct.* 1939).

In the last days of the old Supreme Court, Mr. Justice Heher in *Burnson v. Evans*, 137 *N. J. L.* 511, 60 *A.* 2d 891 (*Sup. Ct.* 1948), reenunciated the mandate in the earlier cases by the expression, "The intent of the lawgiver is to be found in the language used," under which appears a quotation from *Lewis' Sutherland, Statutory Construction* (*2d ed.*), *section* 366:

"Even when a court is convinced that the Legislature really meant and intended something not expressed by the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of language which is free from ambiguity."

I find the defendant guilty of violation of the said ordinance and its amendment, and impose a fine of Ten ($10) dollars, without costs.