159 N.J. Super. 233 (1978)
387 A.2d 1206
WILLIAM F. HYLAND, ATTORNEY GENERAL OF NEW JERSEY, COMPLAINANT-RESPONDENT,
v.
ARTHUR W. PONZIO, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1978.
Decided April 26, 1978.
*235 Before Judges ALLCORN, MORGAN and HORN.
Mr. Ralph J. Kmiec argued the cause for appellant (Messrs. Kmiec & Palumbo, attorneys).
Mr. Jerome M. Lane, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General, attorney; Mr. William F. Hyland, former Attorney General; Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
The opinion of the court was delivered by HORN, J.A.D.
Appellant-respondent Arthur Ponzio appeals from an order of the State Board of Professional Engineers and Land Surveyors (State Board) revoking his license for land surveying after his conviction in the United States District Court of 16 counts of conspiracy, bribery and extortion while he was Commissioner of the Department of Public Works for the City of Atlantic City. Said order granted leave to apply for restoration of the license no less than five months subsequent to the date of the order. The State Board stayed the revocation pending this appeal.
The complaint filed by the Attorney General with the State Board asserted as reasons for his demand that respondent's license be revoked that said convictions demonstrated conclusively that respondent lacked the good character and reputation required for licensure as a land surveyor under N.J.S.A. 45:8-35, and that the acts for which respondent was convicted were "inconsistent with the public welfare and are such a gross dereliction from the duties of good citizenship and professional responsibility of honesty and fair dealing, that they constitute misconduct in *236 the practice of land surveying, contrary to N.J.S.A. 45: 8-38."
At a formal administrative hearing before the State Board the Attorney General introduced into evidence the record of the convictions and iterated the reasons stated in his complaint for revocation of respondent's license. Respondent offered into evidence certain exhibits, including the sentencing judge's sympathetic remarks when he vacated respondent's remaining incarcerating sentence in August 1976. Respondent testified briefly. He denied that he was in fact guilty of the crimes of which he was convicted and he asserted that the convictions were unrelated to his land-surveying activities.
The State Board rested its decision to revoke the license upon the tendered hypothesis of the Attorney General, finding, among other things, that

* * * * * * * *
2. The crimes for which respondent was convicted demonstrate a lack of the good character and reputation required pursuant to N.J.S.A. 45:8-35 of all licensees and a disregard of the public welfare.

* * * * * * * *
Thus, the revocation was founded solely on lack of that good character and reputation of defendant required by N.J.S.A. 45:8-35 of all applicants for license "and a disregard of the public welfare."
N.J.S.A. 45:8-35, as applicable here, provides:
* * * To be eligible for license as a professional engineer or land surveyor an applicant shall be a citizen of the United States of America or shall have made declaration of his intention to become a citizen of the United States of America. An applicant for license as a professional engineer or land surveyor shall be able to speak and write the English language. All applicants shall be of good character and reputation. [Emphasis supplied]
N.J.S.A. 45:8-38, dealing with the revocation of licenses pertinently, provides:
*237 The examining board shall have the power to revoke the certificate of license of any professional engineer or land surveyor licensed hereunder who is found guilty by said board of any fraud or deceit in obtaining a certificate of license, or of gross negligence, incompetency or misconduct in the practice of professional engineering or land surveying.
The sole contention of appellant is that the State Board was without jurisdiction to revoke his license on the basis of a finding that he lacked good character and reputation, N.J.S.A. 45:8-35, and that there was no proof of a finding of any misconduct for which the Board was expressly authorized to revoke the license of a land surveyor under N.J.S.A. 45:8-38.
Respondent's attorney candidly conceded at oral argument before us that if the crimes of which respondent was convicted had taken place before he was licensed he would not have been entitled to the license. The issue is a narrow one  whether the State Board was empowered under the statute to revoke respondent's license for a reason which would have furnished a basis to deny an application for the issuance of such license in the first instance.
Respondent's convictions certainly involve moral turpitude, a fact which remains undenied by him. There is also no doubt, as is conceded by respondent, that the convictions evidence a lack of good character and reputation.
Licenses to practice professional engineering or professional land surveying are required as a matter of public policy of this State "[i]n order to safeguard life, health and property, and promote the public welfare * * *." N.J.S.A. 45:8-27. Like the profession of engineering, we regard that of land surveying as "no ordinary trade or calling." See Prouty v. Heron, 127 Colo. 168, 255 P.2d 755, 758 (Sup. Ct. 1953). It involves not only skill and knowledge, but certainly honesty, integrity and reliability. The products of land surveyors are cornerstones of titles and are relied upon by real estate purchasers, lenders and title insurers. Cf. Curtis v. Aaronson, 49 N.J.L. 68 (Sup. Ct. 1886); *238 Jackson v. Perrine, 35 N.J.L. 137 (Sup. Ct. 1871); Den d. Haring v. Van Houten, 22 N.J.L. 61 (Sup. Ct. 1849); State v. Ford and Baldwin, Surveyors, 1 N.J.L. 53 (Sup. Ct. 1791). See also, Abelson's, Inc. v. N.J. State Board of Optometrists, 5 N.J. 412 (1950); Rite Aid of N.J. v. N.J. Bd. of Pharm., 124 N.J. Super. 62 (App. Div. 1973), certif. den. 63 N.J. 503 (1973).
A statute must be construed liberally as a whole in order to effect the declared or clearly implied purposes for which it was enacted. State v. Spindel, 24 N.J. 395, 402-403 (1957); Denbo v. Moorestown Tp., 23 N.J. 476 (1957); Horwitz v. Reichenstein, 15 N.J. 6 (1954); State v. McCall, 14 N.J. 538 (1954). "Authority delegated to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent," and the purpose of the statute should not be frustrated by an unduly narrow interpretation. Cammarata v. Essex Cty. Park Comm'n, 26 N.J. 404, 411 (1958).
In the light of these tenets we have no difficulty in determining that the State Board acted appropriately within the jurisdiction conferred upon it. Its finding of appellant's tainted character and reputation supported by ample proof of his convictions warranted the revocation within the legislative authority.
In the first place, it would appear to be incongruous that one must have a good character and reputation in order to qualify for a license, but need not continue to enjoy the same character and reputation once the license is issued.[1] In Div. of the N.J. Real Estate Comm'n v. Ponsi, 39 N.J. Super. 526 (App. Div. 1956), the question under decision was the authority of the New Jersey Real Estate Commission to suspend, revoke or deny the renewal of a license to a real estate broker who was deemed guilty of "any *239 conduct which demonstrates unworthiness, incompetency, bad faith or dishonesty," where that conduct was not connected with the activities for which he was licensed to perform. In upholding the Commission's authority to revoke the license, some of the statements of the court may well be applicable to the instant case:
It is noticeable that our statute obliges an applicant for the license to furnish to the Commission "evidence of good moral character." N.J.S.A. 45:15-9. Compare, applicant for insurance broker's license, N.J.S.A. 17:22-6.6. It seems inconceivable that the Legislature intended to establish one standard for the issuance of a license and another for its renewal or revocation. The Commission may "in its discretion" refuse to grant any new license "upon sufficient cause being shown." N.J.S.A. 45:15-15. No license shall be issued to any person who has been convicted of certain specified criminal offenses. N.J.S.A. 45:15-12.1. Those provisions display the broad legislative object and purpose to limit the licenses to reputable, honorable and conscientious persons. [39 N.J. Super. at 531; emphasis supplied]
See also, Higgins v. N.J. Bureau of Securities, 100 N.J. Super. 266 (App. Div. 1968). And, in the same sense, what was stated concerning residency requirements in Skolski v. Woodcock, 149 N.J. Super. 340 (App. Div. 1977), is likewise applicable. There Judge Michels said:
We are of the view that the statutory specification of residency established by N.J.S.A. 11:22-7 as a condition for eligibility of an applicant for government employment is of a continuing nature and must exist not only at the time of the initial appointment or employment but must continue during such employment. See 56 Am. Jur.2d, Municipal Corporations, Counties, and other Political Subdivisions, § 248 at 307. Cf. Kennedy v. Newark, supra, 29 N.J. [178] at 188; Burnson v. Evans, 137 N.J.L. 511, 515 (Sup. Ct. 1948). A fair reading of this statute in the light of the purposes of the residency requirement compels such a construction. It would make little sense to impose a residency requirement as a qualification for eligibility for appointment or employment and not require the same qualification for continued employment. If such were the case, any applicant, after satisfying the residency requirement for initial employment, could immediately remove from the political subdivision or unit and successfully claim the right to continued governmental *240 employment. We cannot conceive that our Legislature intended such a result when it enacted N.J.S.A. 11:22-7. Such a construction is clearly contrary to the equity and spirit of the Civil Service Act. [at 345; citations omitted]
In the second place, the holdings of our Supreme Court in In re Suspension of Heller, 73 N.J. 292 (1977), and In re Berardi, 23 N.J. 485 (1957), support our view that the State Board was vested with jurisdiction to revoke the certificate of a licensee for failure to maintain the good character and reputation that were prerequisites to the licensee's eligibility for licensure.
In In re Suspension of Heller, supra, appellants, whose licenses were revoked by the State Board of Pharmacy on the ground that they were guilty of grossly unprofessional conduct and practices, contended that the Board was without power to deprive them of their licenses because the statute specifically defined the acts which constituted gross unprofessional conduct and because the conduct of defendants was not specifically included within such definitions. In a well-reasoned and documented opinion our Supreme Court upheld the Board's action on the ground that the Board was not limited to merely the specifically defined acts in determining that defendants had violated the statute and were in fact guilty of unprofessional conduct. What was said in that case is equally applicable here: "That which is clearly implied is as much a part of the law as that which is expressed." Ward v. Scott, 11 N.J. 117, 123 (1952), as quoted in Heller, supra, 73 N.J. at 302. Moreover, it was said in Heller (at 304): "Our cases, Rite Aid, supra, and others, have rejected such narrow interpretation as discordant with the legislative intent in its delegation of power."
In In re Berardi, supra, the Superintendent of the State Police had revoked the private detective license held by appellant because of the latter's conviction of federal income-tax fraud. The Superintendent found that appellant's conviction was sufficient cause for revocation under the statute which authorized him to take such action "after hearing *241 for cause." In rejecting appellant's contention that the statute did not define with any particularity or fix proper standards for the determination of what "cause" was, the court said:
We are in accord with the Appellate Division, that in ascertaining the presence of standards and norms to support delegated powers, it is fundamental we are not confined to the four corners of the particular section, but are obligated to examine the entire act in the light of its surroundings and objectives, nor need the standards be set forth in express terms if they may be reasonably inferred from the statutory scheme as a whole. Ward v. Scott, [supra] [11 N.J.]; Schierstead v. City of Brigantine, 20 N.J. 164 (1955).
We are likewise in accord with the view of the Appellate Division that the same standards that control the granting of the application for the license apply with equal force in a proceeding for the revocation of the license "for cause."
Under this statute every individual or individual member of a firm, association or corporation applying for a license must be vouched for by the written approval of five reputable citizens, property owners of the county where it is proposed to conduct the business. The application must contain not only the facts as to the identity of the applicant but also "such other facts as may be required by the superintendent as will tend to show the character, competency and integrity of each person or individual signing such application." (Italics supplied) Any person who states any fact falsely is guilty of a misdemeanor. N.J.S.A. 45:19-11.

* * * * * * * *
The phrase "for cause" therefore gathers its full meaning from this overall objective of the law and it means such cause as would render the person unfit to engage in the business or profession in the light of the potential evil and mischief which the Legislature sought to regulate and eradicate.
Under this statute the standard is the testing of the known facts against the ordinary and generally accepted meaning of the words "good character, competency, and integrity." The Superintendent has the right to deny a license to an applicant who may never have committed an act denominated a crime or an offense by the laws of this State or the United States. If the investigation of the application for the license and other related facts shows that the applicant's private life or his record as an investigator or police officer has not been such that the Superintendent could, in the exercise of his judgment, conclude that the applicant had "good character, competency, and integrity" required by the statute, then the license necessarily should be denied.
*242 Since we have concluded the same test should apply on the hearing for revocation, the basic test again is whether the facts established at the hearing show a lack of "good character, competency, and integrity" or whether in the judgment of the Superintendent the facts and circumstances are such that the required good character, competency and integrity has [sic] been impaired to such an extent that the holding of the license by the particular individual would create the possibility of the very mischief and danger the statute aimed to prevent. [23 N.J. at 491-493]
We are well aware that none of the foregoing cases is precisely on point. We view their holdings, however, as supportive of the authority of the State Board in the case at bar to revoke the license of respondent.
As stated in In re Comm'r of Banking and Insurance v. Parkwood Co., 98 N.J. Super. 263, 271-272 (App. Div. 1967):
* * * [T]he courts have often stated that the powers of an administrative agency should be liberally construed to permit the agency to achieve the task assigned to it, and that such administrative agency has such implied incidental powers as may reasonably be adapted to that end. [at 271-272]
See also, New Jersey State AFL-CIO v. Bryant, 55 N.J. 171, 176 (1969). Allendale Field and Stream Ass'n v. Legalized Games of Chance Control Comm'n, 41 N.J. 209, 217 (1963). Bechler v. Parsekian, 36 N.J. 242, 249-251 (1961); Cammarata v. Essex Cty. Park Comm'n, supra; Ward v. Scott, supra.
We observe that N.J.S.A. 45:8-27 et seq. has since been amended. L. 1977, c. 340. The changes include an amendment of N.J.S.A. 45:8-38, which specifically authorizes the revocation of a license upon a finding that a licensee has "been convicted of any criminal offense or entered a plea of nolo contendere to a charge thereof." However, we do not regard this addition as significant to the issue herein. Jersey City Chap. Prop. Owner's, &c., Ass'n v. City Council, 55 N.J. 86, 95 (1969).
For the foregoing reasons the decision and order of the State Board are affirmed.
NOTES
[1] N.J.S.A. 45:8-37 provides that licenses are renewable on or before April 30 of each year by the payment of the stated fee.