KEITH B. JOHNSON, APPELLANT, V. STATE OF NEBRASKA EX REL. STATE REAL ESTATE COMMISSION OF THE STATE OF NEBRASKA, APPELLEE.
KATHERINE A. HARTMAN, APPELLANT, V. STATE OF NEBRASKA EX REL. STATE REAL ESTATE COMMISSION OF THE STATE OF NEBRASKA, APPELLEE.

274 N. W. 2d 536

Filed January 24, 1979. Nos. 41707, 41708.

Robert C. Doyle of Walsh, Walentine & Miles, for appellants Johnson and Hartman.

Paul L. Douglas, Attorney General, and Robert H. Petersen, Special Assistant Attorney General, for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

SPENCER, C. J., PRO TEM.

Appellants, Keith B. Johnson, a real estate salesman, and Katherine A. Hartman, a real estate broker, were censured by the State Real Estate Commission. The District Court affirmed the actions of the commission and appellants prosecute these appeals. Appellants allege the District Court erred in finding Johnson had submitted false documents to a loan company in violation of Commission Rule 6 (3) (b) and Hartman had demonstrated incompetence as a real estate broker. We affirm.

Appellant Johnson is vice president of Westwood Homes, Inc. Appellant Hartman is branch manager for C. G. Smith Realty Co. The two companies share office space and Smith is the exclusive sales agent for Westwood Homes.

On July 30, 1976, Westwood Homes, Inc., entered into a purchase agreement with one of its employees, Peggy L. Culver, and her husband, whereby the Culvers purchased a home to be constructed by Westwood. The purchase agreement, which was prepared under the direction of Keith B. Johnson and signed by the Culvers, acknowledged the receipt of $2,000 as follows: "Received from Peggy Culver the sum of $2,000.00 ($ Two Thousand Dollars) to apply on the purchase price of the above described property on the terms and conditions stated above. It is further agreed and understood that, in case of any legal defects in the title which cannot be cured within a reasonable time after filing with us a written notice of such defect, the money hereby paid is to be refunded. In the event of the refusal or failure of the buyer to consummate the purchase, said deposit shall be retained as liquidated damages for failure to carry out said contract of sale as herein agreed to. This receipt is given and offer to purchase taken, subject to approval and written acceptance by the owner on or before three (3) days from the above date. In the event that the offer is

not so accepted, the money deposited shall be refunded." The agreement was accepted on behalf of Westwood Homes, Inc. by Keith B. Johnson, vice president.

The purchase agreement bears an impression made by a stamp, with the following language: "Earnest deposit is hereby received by C. G. Smith Realty Co., agent for Westwood Homes, Inc. to be deposited in Westwood Homes, Inc. account."

Hartman, who was the branch manager for Smith, had supervision of all salesmen licensed under Smith, even though some of them actually worked for Westwood. Part of Hartman's work as branch manager was to maintain files on all of Westwood's sales. She was familiar with the Culver deal and helped in the closing.

In November 1976, a trust account examiner of the State Real Estate Commission examined the trust account of C. G. Smith, a licensed real estate broker. In connection with this examination he found the purchase agreement described above, showing an earnest deposit of $2,000. The examiner could not find any record of the $2,000 earnest deposit having been paid.

Johnson testified that the home to be constructed would not be completed until the fall or possibly December. Mrs. Culver knew she was in line for a bonus and prior to executing the purchase agreement had approached Johnson to see if Westwood would sell her a new home and apply the bonus to be received toward the downpayment. This was agreeable to Johnson. The purchase price of the new home was $37,500, the standard price for which the same house would be sold to the public.

Appellant Johnson suggested that the Culvers make application for a mortgage loan through Commercial Federal Savings & Loan Association and made arrangements for them to see Frank Vogt, a duly authorized loan officer of Commercial. He told

Vogt of the proposed transaction whereby the downpayment would be forthcoming from the bonus.

On or about July 30, 1976, Vogt received a copy of the purchase agreement along with a letter dated July 30, 1976, stating: "Dear Mr. Vogt, This is to confirm that Westwood Homes has elected to pay Mrs. Culver a bonus of $2,500.00 in December of 1976. Of course this bonus is dependent upon her continued and satisfactory employment with our company. If I may be of further assistance please let me know. Sincerely, Keith B. Johnson [sgd.] Keith B. Johnson, Vice President, Westwood Homes, Inc."

On August 12, 1976, the Culvers made a loan application at Commercial through Vogt. The application set forth a purchase price of $37,500, and stated there was a $2,000 downpayment. Attached was a financial statement signed by the Culvers which showed $2,000 as having been paid to Westwood Homes, which amount was included in the net worth shown on the financial statement.

The loan application, purchase agreement, and the July 30, 1976, letter with reference to the bonus were part of the loan package submitted for approval to the Commercial loan committee and to the Mortgage Guarantee Insurance Corporation, which corporation would insure the loan.

The purchase agreement was kept in the files of C. G. Smith Realty Co. under the control of the appellant Hartman. When Hartman was questioned by the trust account examiner she informed him that the $2,000 earnest deposit had not been paid.

While the record would indicate that the loan officer knew of the arrangement, the papers forwarded to the loan company and to the Mortgage Guarantee Insurance Corporation would not disclose this fact. Actually, it would give the impression that Peggy Culver was to receive $2,500 in December, and the reasonable inference would be this was in addition to the assets shown by her on the finan-

cial statement forwarded with the loan application.

Rule 6 (3) (b) reads as follows: "Actions demonstrating unworthiness shall include but not be limited to the following: (b) Representing to any lender, guaranteeing agency, or any other interested party, either verbally or through the preparation of false documents, an amount in excess of the true and actual sale price of the real estate or terms differing from those actually agreed upon."

Appellants knew or should have known that it was a federal crime to make a false statement to a federal savings and loan association as provided for in 18 U. S. C. A. 1014: "Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of * * * a Federal Savings and Loan Association * * * upon any application, * * * purchase agreement, * * * shall be fined not more than $5,000 or imprisoned not more than two years, or both."

Johnson prepared the papers. Hartman as the manager of Smith handled the Westwood sales and was responsible for the actions of those Westwood employees who held real estate licenses. The letter to the loan company did not explain the fact that the earnest deposit had not actually been paid. Hartman should have required a copy of a full disclosure to be attached to the purchase agreement, explaining in detail the transaction. Further, the purchase agreement should not have contained the stamp of C. G. Smith Realty Co. acknowledging receipt of the earnest deposit and stating it had been deposited in the Westwood Homes, Inc. account.

In a proceeding to review an order of the State Real Estate Commission the questions to be determined are whether the order of the commission was supported by substantial evidence, whether the commission acted within the scope of its authority, and whether its action was arbitrary, capricious, or un-

reasonable. Haller v. State ex rel. State Real Estate Commission, 198 Neb. 437, 253 N. W. 2d 280 (1977).

We find the evidence adduced was sufficient to find that both appellants knowingly violated the rules of the commission in showing that a $2,000 earnest deposit had been received, when in fact both parties knew that no deposit had been made and that the deposit actually was contingent upon Peggy Culver receiving a bonus in December.

The action of the State Real Estate Commission in these cases is supported by substantial evidence justifying the order made. It was made within the scope of its authority and was not arbitrary, capricious, or unreasonable.

The judgment of the District Court affirming the action of the State Real Estate Commission was correct and is affirmed.

AFFIRMED.