LARON L. WRIGHT, APPELLANT, V.
STATE OF NEBRASKA EX REL. STATE REAL ESTATE
COMMISSION OF THE STATE OF NEBRASKA, APPELLEE.

304 N.W.2d 39

Filed April 3, 1981. No. 43215.

Dennis E. Martin and Edward F. Pohren of Dwyer, O'Leary and Martin, P.C., for appellant.

Robert H. Petersen for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Laron L. Wright, plaintiff and appellant herein, ap-

peals to this court from a decree entered by the District Court of Douglas County, Nebraska, affirming an order of the State Real Estate Commission revoking the plaintiff's real estate broker's license. We affirm.

The facts of this case, as set out in the record made before the State Real Estate Commission which was admitted in evidence as exhibit 1 by the District Court, reveal that the plaintiff is a real estate broker residing in Broken Bow, Nebraska. Since 1971 he has made his living from the sale of real estate in that community, and was a licensed real estate broker in this state. It appears that prior to July 22, 1975, Wright was the owner of a residential dwelling, described as Lot 5, Block 23, J. P. Gandy's Addition to Broken Bow, Custer County, Nebraska. On July 22, 1975, the plaintiff entered into a purchase agreement to sell the property to Joseph and Ethel Holcomb, an elderly couple who had sold their farm in Custer County. The purchase agreement, which recited a selling price of $26,000, also provided that Wright would pay off a first mortgage to First Federal Savings & Loan Association of Lincoln and deliver the property to the Holcombs free and clear of any encumbrances. At the closing of the transaction, the Holcombs paid Wright the $26,000 agreed upon and Wright delivered to the Holcombs a survivorship warranty deed. Wright, however, did not pay off the mortgage to First Federal of Lincoln, as he agreed to do, and instead used the purchase money to pay off other debts.

In approximately February of 1977 Joseph Holcomb died, and Ethel Holcomb was subsequently placed into a rest home, and at that time the Nebraska State Bank & Trust Company was appointed the guardian of Mrs. Holcomb. It appears that during the spring of 1978 the guardian began to run low on funds for Mrs. Holcomb's support and decided to sell the property which had been purchased from the plaintiff. In April of 1978 the guardian entered into a purchase agreement with a Mr. Johnson, and it was then discovered that the mortgage

owed by the plaintiff to First Federal of Lincoln had not been paid.

In July of 1978 Charles Giles of the Nebraska State Bank & Trust Company filed a complaint against the plaintiff with the State Real Estate Commission. In August of 1978, after the complaint had been filed with the Commission, the plaintiff paid off the mortgage owed to First Federal of Lincoln.

On October 24, 1978, a show cause hearing on the formal complaint was held by the State Real Estate Commission, at which time the plaintiff and Mr. Giles both testified and certain exhibits were introduced into evidence. Following the presentation of the evidence, the Commission held a 5-minute closed session, found Wright to be in violation of Neb. Rev. Stat. § 81-885.24(28) (Reissue 1976), and revoked his real estate broker's license on the grounds that Wright's actions demonstrated his unworthiness and incompetence to act as a real estate broker. Plaintiff thereafter appealed the decision of the State Real Estate Commission to the District Court of Douglas County, on the record made before the Commission, under Neb. Rev. Stat. § 81-885.30 (Reissue 1976). In its decree dated December 21, 1979, the court affirmed the order of the Commission, finding that the Commission had acted within the scope of its authority; that there was substantial evidence to support the revocation order; and that the action of the State Real Estate Commission was not arbitrary or capricious.

The plaintiff now appeals to this court, assigning as error: (1) The court erred in determining that the Commission's order was supported by substantial evidence; (2) The court erred in determining that the action of the Commission was not arbitrary, capricious, or unreasonable; and (3) The court erred in affirming the order of the State Real Estate Commission.

It is the plaintiff's contention that after entering into the purchase agreement with the Holcombs, he told them of certain financial difficulties he had en-

countered, and had received the Holcombs' permission to use the purchase money to pay off his debts so long as they would eventually receive clear title to the residential property. We note, however, that the only evidence to this effect came from Wright, the appellant. The purchasers of the property, Joseph and Ethel Holcomb, did not testify at the trial, Joseph having previously died and Ethel having been adjudged an incompetent and placed under the guardianship of the Nebraska State Bank & Trust Company. Neither the State Real Estate Commission nor the District Court, on appeal, was apparently convinced by this testimony as indicated by the decision they rendered. It is clear from the record that Wright's primary contention in this case is that his competency to act as a real estate broker is not an issue in the matter since the property he sold was his own property, and he was not acting as a broker at any time during the transaction in question.

A review of certain applicable Nebraska statutes will be helpful at this point. All references will be to Neb. Rev. Stat. §§ 81-885.01 to 81-887.03 (Reissue 1976), which deal with the authority of the State Real Estate Commission. We point out, however, that there have been extensive amendments and modifications of the foregoing sections since 1976 which, however, are not applicable.

Section 81-885.10 provides that the Commission shall have the full power to regulate the issuance of licenses and to revoke or suspend licenses issued under the provisions of §§ 81-885.01 to 81-885.47 and to censure licensees. Section 81-885.12 sets out the personal requirements for applicants for such licenses and provides that licenses shall be granted only to persons "who bear a good reputation for honesty, trustworthiness, integrity, and competence to transact the business of broker or salesman in such manner as to safeguard the interests of the public, and only after satisfactory proof of such qualifications has been presented to the commission." That section also provides that the grounds for

suspension or revocation of a license, as provided for by §§ 81-885.01 to 81-885.47, or the previous revocation of a real estate license, shall also be grounds for refusal to grant a license.

The provisions of the statute most directly applicable to the case under consideration are in § 81-885.24, which sets out specific unfair trade practices which are grounds for revoking or suspending the license or certificate of real estate brokers. That section provides in part as follows: "The commission may, upon its own motion, and shall, upon the sworn complaint in writing of any person, investigate the actions of any broker, associate broker, salesman, or subdivider and shall have power to censure the licensee or certificate holder or to revoke or suspend any license or certificate, issued under sections 81-885.01 to 81-885.47 whenever the license or certificate has been obtained by false or fraudulent representation or the licensee or certificate holder has been found guilty of any of the following unfair trade practices: . . . (28) Demonstrating unworthiness or incompetency to act as a broker, associate broker, or salesman, whether of the same or of a different character as hereinbefore specified."

Section 81-885.25 provides that before the Commission shall censure a licensee or before revoking or suspending a license, it shall give the holder of the license a hearing on the matter and shall, at least 20 days prior to the date set for hearing, notify the license holder in writing. Section 81-885.29 provides that if the Commission shall determine that the license holder has been guilty of any of the violations previously referred to, his license shall be revoked or suspended forthwith, or the Commission may enter an order censuring a license holder. Section 81-885.30 provides that within 10 days after an order of the Commission has become final, the applicant for a license or a license holder may obtain judicial review thereof by giving notice to the director of an appeal, obtaining a certified transcript of the papers and evidence, and the payment of the required

fees, and shall, within 30 days of the entry of such order, file a petition for review in the District Court for the county where the cause of action or some part thereof arose. Section 81-885.31 further provides that in any judicial proceeding under §§ 81-885.01 to 81-885.47 the court shall consider the matter de novo upon the record. The court may on its own motion order additional evidence to be taken before it; and, in addition, any party to such review may offer additional evidence before the court upon serving 10 days' written notice of the offer on the other parties.

The principal issue in this case is whether Wright is correct in his contention that a real estate broker does not come within the purview of § 81-885.24(28) unless the acts complained of were performed in his official capacity as a licensed real estate broker. Concededly, there is a split of authority on this issue, some cases holding that the revocation of a broker's license may not be based on acts which were not performed in his capacity as broker or in the furtherance of a brokerage transaction, and other jurisdictions holding to the contrary. 12 Am. Jur. 2d *Brokers* § 21 (1964); Annot., Grounds for revocation or suspension of license of real-estate broker or salesman, 56 A.L.R.2d 573 (1957). Upon a review of the authorities, we are persuaded and convinced by the language and reasoning in cases such as *Goodley v. N.J. Real Estate Com.*, 29 N.J. Super. 178, 102 A.2d 65 (1954), in which case the court found that a real estate broker had demonstrated "unworthiness" under their statute authorizing the real estate commission to suspend or revoke the license of real estate brokers deemed guilty of conduct demonstrating unworthiness. In *Goodley*, the broker who negotiated the sale and received a commission thereon was also president of the corporation which was the grantor. The court held that the word "unworthiness," as used in the New Jersey statute, signified the lack of those ethical qualities that befit the vocation. In its opinion, the court stated:

"Goodley occupies two roles in this transaction, real estate broker and president of the corporate grantor. However, he cannot, under the circumstances here, escape a charge of unworthiness because the onus of the charge falls in part upon himself in a capacity other than as real estate broker. We conclude that under the circumstances his refusal to assist in the rectification of a default brought about by his own negligence justifies a finding of unworthiness.

"The word 'unworthiness,' in the context here, signifies a lack of those ethical qualities that befit the vocation. *Marrs v. Matthews*, 270 S.W. 586 (Tex. Civ. App. 1925); *cf. Woodstown National Bank & Trust Co. v. Snelbaker*, 136 N.J. Eq. 62 (Ch. 1944); *In re Meyerson*, 190 Md. 671, 59 A.2d 489, 490 (Ct. App. 1948). By including the matter of unworthiness in N.J.S.A. 45:15-17(e), the Legislature has charged the Commission with the high responsibility of maintaining ethical standards among real estate brokers and salesmen. The maintenance of those standards serves the vocation well. See *St. Germain v. Watson*, 96 Cal. App. 2d 862, 214 P.2d 99 (Dist. Ct. App. 1950), hearing denied by Supreme Court, 214 P.2d 106 (1950), and *Holland v. Florida Real Estate Commission*, 130 Fla. 590, 178 So. 121 (Sup. Ct. 1938), pointing out that statutes there, rather different from ours in their terms, but nevertheless along the same lines, were designed for those ends. For statutes in other states which contain the word unworthiness, see the following cases (which, however, deal with matters not pertinent here): *Leakey v. Georgia Real Estae Commission*, 80 Ga. App. 272, 55 S.E.2d 818 (Ct. App. 1949); *Feight v. State Real Estate Commission*, 151 Neb. 867, 39 N.W.2d 823 (Sup. Ct. 1949)." *Id.* at 181-82, 102 A.2d at 67.

In the recent case of *S.C. Real Estate Commission v. Boineau*, 267 S.C. 574, 230 S.E.2d 440 (1976), the court held that a realtor could have his broker's license revoked for conduct not strictly related to the transaction in which he was acting as broker. In that case,

the realtor contended that he was acting not as a real estate broker but on his own behalf, and further alleged that the statute for revocation of a real estate license applied solely to activities of a broker while acting in his capacity as a broker. In reply to that contention, the court stated:

"We disagree. Even as members of the bar are subject to disciplinary procedures for conduct not strictly related to the practice of law, realtors may have their licenses revoked for conduct not strictly related to a transaction in which they are acting as broker.

"In *McKnight v. Florida Real Estate Commission*, Fla. App., 202 So. (2d) 199 (1967) the court, discussing a similar situation, noted that 'it would be ludicrous to construe the statutes to mean that a broker to be answerable to the Real Estate Commission must commit the unlawful acts when engaged in real estate negotiations but should he commit the same unlawful acts when not engaged in real estate negotiations he would still be of good character and beyond the Commission's jurisdiction.'

. . . .

"Finally, it should be noted that § 56-1545.10 requires proof of a showing of honesty, integrity, truthfulness and good reputation for any person desiring to become a broker. It does not logically follow that an initial applicant should be required to possess higher moral standards than an experienced real estate broker." *Id.* at 579-80, 230 S.E.2d at 442.

This same argument advanced by Wright was rejected by the Commonwealth Court of Pennsylvania in *Yingling, Jr. v. State Real Est. Comm.*, 8 Pa. Commw. Ct. 556, 304 A.2d 524 (1973), a case factually similar to the instant case. In *Yingling*, the appellant broker agreed to sell his own house to a buyer for $23,000. The buyer gave the broker $6,500 as a downpayment. When it came time to close, however, the broker not only failed to appear but it was discovered that there was an outstanding mortgage against the property which had not

been paid. Despite several attempts, the broker failed to pay the outstanding mortgage and the buyers made a demand for the return of their downpayment. The broker returned only $2,500 of the $6,500 downpayment and the buyers subsequently filed a complaint with the State Real Estate Commission. In affirming an order of the commission revoking the broker's license, the court stated:

"The Commission's first conclusion of law was that it had jurisdiction. Appellant in this appeal contends that the Commission was in error relative to this conclusion of law since he was selling property that he owned and therefore was not acting as a broker under the Act. This same contention was rejected by us in *Fibus v. State Real Estate Commission*, 7 Pa. Commonwealth Ct. 74, 299 A.2d 375 (1973), where we followed *State Real Estate Commission v. Tice*, 200 Pa. Superior Ct. 553, 190 A.2d 188 (1963), and held that a broker's license may be suspended or revoked for misconduct occurring in a real estate transaction when the broker is acting for himself, as well as when he acts for others. We are not persuaded that we should abandon *Fibus* and therefore we hold that the Commission did have jurisdiction here." *Id.* at 560-61, 304 A.2d at 526-27.

In *State Real Estate Comm. v. Tice*, 200 Pa. Super. Ct. 553, 559, 190 A.2d 188, 190-91 (1963), the Superior Court of Pennsylvania stated: "The court below construed our Real Estate Brokers License Act so that it would apply only to persons in connection with an agency transaction and would not apply to a person who was selling his own property. *In our judgment, there can be no justification of an interpretation of the licensing act which would allow a broker to be honest as a broker and dishonest as a property owner.* A broker who is dishonest or incompetent in the real estate activities in which he is involved as owner, is not likely to be honest or competent in his activities which are purely brokerage in nature. *The purpose of real estate licensure is to bar the dishonest or incompetent for entry into this*

*occupation:* [citations omitted]." (Emphasis supplied.)

We concur with the aforementioned statements of the Pennsylvania courts as they apply to the circumstances present in the instant case. We note that in *Bartlett v. State Real Estate Commission,* 188 Neb. 828, 199 N.W.2d 709 (1972), this court affirmed the Commission's decision not to grant a real estate broker's license to a party who had passed the required examination. It was found that the plaintiff in *Bartlett* had been an insurance salesman whose insurance license had been revoked because he had engaged in multiple acts of fraud, misrepresentation, and dishonest practice. It would make little sense for this court to affirm the authority of the State Real Estate Commission to deny a broker's license for misconduct engaged in outside the real estate business, but deny the Commission such authority to revoke a license for misconduct occurring after a broker's license has been issued.

To the same general effect, see *Phillips v. Mann,* 147 So. 2d 559 (Fla. App. 1962); *Hyland v. Ponzio,* 159 N.J. Super. 233, 387 A.2d 1206 (1978); *Div. of the N.J. Real Estate Comm. v. Ponsi,* 39 N.J. Super. 526, 121 A.2d 555 (1956).

It is a well-established rule that in proceedings to review an order of the State Real Estate Commission the questions to be determined are whether the order of the Commission is supported by substantial evidence, whether the Commission acted within the scope of its authority, and whether its action was arbitrary, capricious, or unreasonable. *Haller v. State ex rel. State Real Estate Commission,* 198 Neb. 437, 253 N.W.2d 280 (1977); *Herink v. State ex rel. State Real Estate Commission,* 198 Neb. 241, 252 N.W.2d 172 (1977); *Johnson & Hartman v. State ex rel. State Real Estate Commission,* 202 Neb. 182, 274 N.W.2d 536 (1979). The term "substantial evidence" is defined in Black's Law Dictionary 1281 (5th ed. 1979) as: "Evidence which a reasoning mind would accept as sufficient to support a particular conclusion and consists of more than a mere scintilla of

evidence but may be somewhat less than a preponderance." See, also, 32A C.J.S. *Evidence* § 1016 (1964). In *Olson v. Westfork Properties, Inc.*, 171 Mont. 154, 557 P.2d 821 (1976), the court stated that for purposes of determining whether the trial court's findings are supported by "substantial evidence," that evidence is such as will convince a reasonable man and on which such man may not reasonably differ as to whether it establishes plaintiff's case; that evidence may be inherently weak and still be deemed "substantial," and one witness may be sufficient to establish the preponderance of the case. Also, in *Robertson Transport. Co. v. Public Serv. Comm.*, 39 Wis. 2d 653, 159 N.W.2d 636 (1968), the court held that "substantial evidence," such as is sufficient to support an administrative decision, is not equated with preponderance of evidence since there may be cases where two conflicting views may each be sustained by substantial evidence. Likewise, in *Consolo v. Federal Maritime Comm'n.*, 383 U.S. 607, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966), the court held that "substantial evidence," for purposes of administrative review, must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury, and this is something less than the weight of evidence; and the possibility of drawing two inconsistent conclusions from evidence does not prevent an administrative agency's finding from being supported by substantial evidence. See, also, *Celebrezze v. Bolas*, 316 F.2d 498 (8th Cir. 1963).

We find that the evidence adduced in this case was sufficient to find that plaintiff's acts demonstrated his unworthiness and incompetence to act as a broker of real estate. The action of the State Real Estate Commission in this case is supported by "substantial evidence" as above defined and justified the order of the Commission and the decree of the District Court affirming such order. We also find that the action of the State Real Estate Commission was within the scope of its

authority, and was not arbitrary, capricious, or unreasonable.

The judgment of the District Court affirming the action of the State Real Estate Commission was correct and must be affirmed.

AFFIRMED.